People v Powell (2025 NY Slip Op 01839)

People v Powell

2025 NY Slip Op 01839

Decided on March 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 27, 2025

111899
[*1]The People of the State of New York, Respondent,
v
Aaron F. Powell, Appellant.

Calendar Date:January 14, 2025

Before:Aarons, J.P., Pritzker, Lynch, Ceresia and Powers, JJ.

Cambareri & Brenneck, Syracuse (Melissa K. Swartz of counsel), for appellant.
Mary E. Saitta, Special Prosecutor, Binghamton, for respondent.

Powers, J.
Appeals (1) from a judgment of the County Court of Broome County (Joseph Cawley, J.), rendered March 8, 2019, upon a verdict convicting defendant of the crimes of murder in the first degree and murder in the second degree (two counts), and (2) from an order of said court, entered January 2, 2020, which set the amount of restitution owed by defendant.
In 2013, defendant was charged by indictment with murder in the first degree and two counts of murder in the second degree following the discovery of Mario Masciarelli and Christina Powell — defendant's estranged wife — deceased in the home Powell formerly shared with defendant. Defendant was convicted as charged and sentenced to prison terms of 25 years to life for each conviction of murder in the second degree, to run consecutively, and to life in prison for the conviction of murder in the first degree, to run concurrently to the other sentences. Upon appeal to this Court, the judgment of conviction was reversed, and the matter was remitted to County Court for a new trial (153 AD3d 1034 [3d Dept 2017]). Thereafter, defendant retained counsel for retrial, however, he ceased payment prior to its commencement. As a result, after certain motion practice, retained counsel was formally appointed to represent defendant pursuant to County Law § 722-b. The matter proceeded to trial, after which defendant was convicted as charged once more and sentenced to the same term of incarceration he had after his initial trial. However, after a hearing he was also ordered to pay a total of $139,231.87 in restitution to the families of the two victims. Defendant appeals from both the judgment of conviction and the order of restitution.[FN1]
Primarily, defendant argues that he was denied his constitutionally protected right to the effective assistance of counsel, as is highlighted by trial counsel's unfavorable comments made on the record during trial. We disagree. "A criminal defendant is entitled to the effective assistance of counsel, defined as representation that is reasonably competent, conflict-free and singlemindedly devoted to the client's best interests" (People v Hines, 228 AD3d 995, 995 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 42 NY3d 938 [2024]). "Discussions of the effect of a lawyer's conflict of interest on a defendant's right to the effective assistance of counsel distinguish between a potential conflict and an actual conflict" (People v Kendricks, 226 AD3d 1150, 1157 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 41 NY3d 1003 [2024]). "Where the conflict is merely potential," as is the situation here, "reversal is mandated only if the defendant can establish that the conflict operated on the defense" (People v Rubadue, 222 AD3d 1266, 1269 [3d Dept 2023] [internal quotation marks and citations omitted]; see People v Kuhn, 221 AD3d 1182, 1184 [3d Dept 2023], lv denied 41 NY3d 1019 [2024]).
Upon remittal, defendant retained the same law [*2]firm who had represented him on the initial appeal and trial was set for July 2018, with a backup date of October 2018. However, defendant failed to continue payment and counsel requested to withdraw from representation, which County Court denied. Primary counsel then applied to be assigned as counsel, with cocounsel, at a rate above that set by statute, indicating that his standard billing rate is $600 per hour and cocounsel's is $450 per hour. Although granting the assignment request, the court denied the further request for compensation above the statutory rate. In September 2018, as trial had already been delayed, counsel moved for further adjournment to January 2019. The court denied the request for adjournment, indicating that the matter had been set for trial for an extended period and that the circumstances of the case had not changed. Not a week later, counsel again sought compensation above the statutory rate, as well as the assignment of another attorney and a paralegal to the defense. Along with this renewed request, counsel also renewed the request for adjournment. Although denying the renewed request for increased compensation and the assignment of additional individuals to the defense, the court did grant adjournment to January 2019. The court took this opportunity to criticize counsel's apparent failure to timely prepare and related delay in requesting adjournment.
Defendant's attorneys then engaged in pretrial motion practice and made certain evidentiary requests, and the matter proceeded to trial in January 2019. Relevant to defendant's present claim, on the seventh day of trial, primary counsel placed on the record that the People had presented a plea offer, whereby defendant would plead guilty to the indictment, and the People would recommend a sentence of 30 years to life, which County Court had approved. Primary counsel made clear that the purpose of this soliloquy — which occurred outside of the presence of the jury — was to place his recommendation to defendant on the record to protect from any future claims. Primary counsel then went on to state that there was "no reason" to believe defendant would not be convicted and sentenced to life without parole, as he had after the first trial, and opined that the proof was "staggeringly overwhelming," making acquittal unlikely. Primary counsel continued to explain that he could not understand defendant's motives for declining to plead guilty, leading him to question defendant's mental health, although clarifying that defendant understands the nature of the charges and is able to discuss the case.[FN2] Primary counsel then equated the continuation of trial as "a very slow guilty plea" and, once again, expressed that he wished to make clear on the record that the plea offer had been communicated to, and discussed at length, with defendant, and that defendant was electing not to follow the recommendation to plead guilty. Subsequently, and again outside the presence of the jury, the court [*3]clarified with defendant that he did not wish to accept the plea offer and, markedly, that he was satisfied with the performance of counsel and did not have any objection to their continued representation of him in this matter. These attorneys went on to represent defendant through the conclusion of trial, as well as at sentencing and at the subsequent restitution hearing.
We in no way condone the comments made by primary trial counsel that went beyond placing the plea offer and recommendation to defendant on the record — most notably, stating that the proof against defendant was overwhelming and that trial essentially amounted to a slow guilty plea. These specific comments went beyond "an appropriate effort to ensure that defendant understood the proceedings before rejecting the plea offer" (People v Davidson, 201 AD3d 1025, 1027 [3d Dept 2022]; compare People v Everett, 222 AD3d 1400, 1400 [4th Dept 2023], lv denied 41 NY3d 965 [2024]; People v Marx, 222 AD2d 763, 764 [3d Dept 1995]). Putting it mildly, these comments were ill-advised and unprofessional (see generally People v Guante, 234 AD3d 637, 638 [1st Dept 2025]; People v Bynum, 68 AD3d 1348, 1350 [3d Dept 2009], lv denied 14 NY3d 798 [2010]). However, the comments in question did not deprive defendant of meaningful representation or a fair trial. Assuming, without deciding, that these comments resulted in a potential conflict of interest (see generally People v Pan, 233 AD3d 492, 492 [1st Dept 2024]), "the record is devoid of proof that any such conflict affected, operated on or bore a substantial relation to the conduct of the defense" (People v Hines, 228 AD3d at 996 [internal quotation marks and citation omitted]; see People v Sanchez, 21 NY3d 216, 223-224 [2013]; People v Roundtree, 220 AD3d 1049, 1054 [3d Dept 2023], lv denied 41 NY3d 985 [2024]). The discussion in question occurred outside the presence of the jury and County Court sealed that portion of the record to ensure that the jury would not become aware of these comments (compare People v Mero, ___ NY3d ___, ___, 2024 NY Slip Op 06385, *5 [2024]).[FN3] Consequently, reversal is not warranted on this basis. Moreover, the court remedied any temporary inaction by granting adjournment and, thereafter, defendant's attorneys filed appropriate pretrial motions, presented cogent opening and closing arguments, vigorously cross-examined witnesses, made relevant objections and pursued a reasonable trial strategy. Thus, viewed in totality and at the time of representation, we find that defendant was provided meaningful representation (see People v Wilcox, 231 AD3d 1350, 1352 [3d Dept 2024]; People v Lewis, 224 AD3d 1143, 1155 [3d Dept 2024], lv denied 42 NY3d 939 [2024]).
That said, as defendant correctly argues, those parts of the judgment convicting him of murder in the second degree (see Penal Law § 125.25 [1]) are inclusory concurrent counts of the conviction of murder in the first degree (see Penal Law § 125.27 [1] [a] [viii]) and, thus[*4], these convictions and the attendant sentences must be vacated (see CPL 300.40 [3] [b]; People v Jenkins, 197 AD3d 927, 927 [4th Dept 2021], lv denied 37 NY3d 1097 [2021]; see generally People v Miller, 6 NY3d 295, 302-303 [2006]; compare People v Morel, 195 AD3d 946, 948 [2d Dept 2021], lv denied 37 NY3d 1028 [2021]). However, despite the mitigating factors advanced by defendant, we do not find that the imposition of the maximum permissible term of life in prison without the possibility of parole imposed for defendant's conviction of murder in the first degree to have been unduly harsh or severe (see CPL 470.15 [6] [b]; People v Wilmarth, 227 AD3d 1282, 1283 [3d Dept 2024]; People v Lall, 223 AD3d 1098, 1111 [3d Dept 2024], lv denied 41 NY3d 984 [2024]).
"To punish a person because he [or she] has done what the law plainly allows him [or her] to do is a due process violation of the most basic sort" (United States v Goodwin, 457 US 368, 372 [1982] [internal quotation marks and citation omitted]). As such, we agree with that aspect of defendant's challenge to the imposition of restitution as improperly punishing him for exercising his right to appeal his initial conviction.
"[T]o insure that trial courts do not impose longer sentences to punish defendants for taking an appeal, a presumption of vindictiveness generally arises when defendants who have won appellate reversals are given greater sentences after their retrials than were imposed after their initial convictions" (People v Young, 94 NY2d 171, 176 [1999]; see People v Flowers, 28 NY3d 536, 541-542 [2016]). "To overcome the presumption, the reasons for the enhanced sentence must be placed on the record, and be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" (People v Brown, 77 AD3d 1190, 1192 [3d Dept 2010] [internal quotation marks and citation omitted]; see People v Martinez, 26 NY3d 196, 199 [2015]).
County Court found that the sentence imposed upon retrial was not enhanced because the term of incarceration was "identical" to that imposed after the initial trial, and, therefore, "defendant will not be required to spend one additional minute incarcerated as a result of the instant sentence imposed." However, this terse conclusion overlooks that restitution is statutorily "part of the sentence imposed" (Penal Law § 60.27 [1]; see People v Perillo, 144 AD3d 1399, 1405 [3d Dept 2016], lv denied 29 NY3d 951 [2017]). Thus, the imposition of restitution after retrial did result in an enhanced sentence following defendant's successful appeal, and, as a result, the presumption of vindictiveness arose (compare People v Flowers, 28 NY3d at 542). However, the court failed to engage in any on-the-record examination of the objective reasons why an enhanced sentence must be imposed, other than finding that it was not vindictive to order defendant "to make financially whole the representatives of [*5]his victims," facts that indisputably existed at the time of the initial sentencing (see People v Rhodes, 109 AD3d 1102, 1103-1104 [4th Dept 2013]; People v Hilliard, 49 AD3d 910, 914 [3d Dept 2008], lv denied 10 NY3d 959 [2008]; compare People v Ocampo, 52 AD3d 741, 742 [2d Dept 2008], lv denied 11 NY3d 792 [2008]).
In fact, defendant acknowledged during the restitution hearing that the imposition of an enhanced sentence would be proper had he engaged in problematic behavior since the initial sentencing — such as harassing the family of the victims or misconduct while in prison. However, defendant maintained that this was not the case, and County Court agreed. Rather, the only circumstance that changed from the initial sentence to the imposition of the present sentence was that defendant was injured while incarcerated and, because of a personal injury action stemming from that injury, came into funds that he did not have at the time of the initial sentence. This change in circumstances is not attributable to defendant and, therefore, cannot be used to overcome the presumption of vindictiveness (see People v Diaz, 189 AD3d 1063, 1067 [2d Dept 2020], lv denied 37 NY3d 955 [2021]; compare People v Borges, 130 AD3d 1057, 1059 [2d Dept 2015], lv denied 26 NY3d 1086 [2015], cert denied 578 US 981 [2016]; People v Carroll, 300 AD2d 911, 917 [3d Dept 2002], lv denied 99 NY2d 626 [2003]).[FN4] Moreover, the People had the opportunity to request restitution as part of defendant's initial sentence and did not do so, "reinforc[ing] the perception that defendant is, in fact, being punished for prosecuting a successful appeal of his first conviction" (People v Brown, 77 AD3d at 1193).[FN5] While we observe that County Court may have not actually been seeking to punish defendant for exercising his right to appeal when it imposed restitution, it was nevertheless the court's obligation to overcome the presumption of vindictiveness by placing the reasons for the enhanced sentence on the record, and, based upon its failure to do so, we are constrained to vacate this portion of defendant's sentence (see People v Cabassa, 218 AD3d 604, 606 [2d Dept 2023], lv denied 40 NY3d 996 [2023]; People v Hicks, 142 AD3d 1333, 1335 [4th Dept 2016]; compare People v White, 153 AD3d 1565, 1567 [4th Dept 2017], lv denied 30 NY3d 1065 [2017]; People v Casanova, 152 AD3d 875, 880 [3d Dept 2017], lv denied 30 NY3d 948 [2017]). Accordingly, the order setting restitution is reversed and defendant's challenge to the amount of restitution imposed has been rendered academic.[FN6]
Aarons, J.P., Pritzker, Lynch and Ceresia, JJ., concur.
Ordered that the judgment is modified, on the law, by reversing defendant's convictions of murder in the second degree under counts 1 and 2 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.
ORDERED that the order is reversed.

Footnotes

Footnote 1: We treat defendant's notice of appeal from the restitution order as valid, though premature (see CPLR 5520 [c]). Moreover, County Court indicated at sentencing that the amount of restitution would be determined after a hearing. Thus, despite that a criminal defendant may not appeal from a restitution order, we treat "the appealed-from restitution order as an appealable amendment to the judgment of conviction" (People v Decker, 217 AD3d 1008, 1009 n [3d Dept 2023] [internal quotation marks and citation omitted]; see CPL 450.10; People v Pixley, 150 AD3d 1555, 1555 n 1 [3d Dept 2017], lv denied 30 NY3d 952 [2017]).

Footnote 2: At the conclusion of this oration, County Court inquired whether defendant's competency to stand trial pursuant to CPL article 730 was being challenged, which primary counsel affirmed was not the case.

Footnote 3: Flowing from this, the record does not support defendant's claim that County Court was subconsciously biased against him as a result of these comments, and that this bias was somehow mirrored by the jury. Nor can we assume that the court decided defendant's motion for a trial order of dismissal based upon trial counsel's supposition that the evidence was overwhelming and not in consideration of the evidence presented by the People in their case-in-chief.

Footnote 4: To the extent the People advanced additional actions at the restitution hearing that they claim defendant took after the first trial, the prosecutor conceded that the first such basis was unsupported by any record evidence and that the second basis — that defendant petitioned for visitation with his and Powell's child after his initial conviction was vacated — was within defendant's legal rights (see Matter of Rumple v Powell, 158 AD3d 1028, 1029 [3d Dept 2018], lv dismissed 31 NY3d 1044 [2018]). In any event, County Court did not make mention of these arguments, and to hold that an enhanced sentence was warranted because defendant sought visitation after his conviction was overturned would directly punish defendant for taking a successful appeal from his initial conviction.

Footnote 5: Analogous to the facts here, in People v Brown (77 AD3d 1190) this Court found that the People's failure to request that defendant be sentenced as a persistent felony offender as part of the initial sentence resulted in the perception that defendant was being punished for exercising his right to appeal when he was sentenced as a persistent felony offender following retrial after a successful appeal.

Footnote 6: The representatives of the victims here are not limited to recovery in restitution and, in fact, have commenced a wrongful death action against defendant, which remains pending on the issue of damages as defendant's liability has been established (NY St Cts Elec Filing [NYSCEF] Doc No. 37, decision and order, in Masciarelli v Powell, Sup Ct, Broome County, index No. EFCA2023000584).